IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NEXT STEP MEDICAL CO., INC., ET AL.<br><br>Plaintiffs<br><br>v.<br><br>JOHNSON & JOHNSON INTERNATIONAL<br><br>Defendant | CIVIL NO.: 09-1187 (FAB/MEL) |

**OPINION AND ORDER**

**I.   PROCEDURAL BACKGROUND**

On February 26, 2009, defendant Johnson & Johnson International ("JJI") filed a notice of removal with the United States District Court for the District of Puerto Rico of plaintiffs' complaint, which alleged claims under Puerto Rico's Law 75 ("Law 75"), P.R. LAWS ANN. tit. 10, §278a1 (2006), Puerto Rico contract law, and Puerto Rico tort law. (Docket 1; Docket 1-2 at ¶¶ 18-35.) On March 10, 2009, plaintiffs Next Step Medical Co. ("Next Step") and Iván Dávila ("Dávila") filed a motion for a preliminary injunction pursuant to Law 75, requesting that the court order JJI to continue its relationship with Next Step as exclusive distributor and provide Next Step with new products to compete in the Puerto Rico market. (Docket 19 at 10.)

During a status conference held on March 12, 2009, defendant first notified the court of its intention to file a motion to compel arbitration. (Docket 29 at 2.) Said motion was filed on March 17, 2009, pursuant to an arbitration clause in the distribution agreement signed by Next Step and JJI on December 7, 2005 ("2005 Agreement"). (Docket 30; Docket 30-2.)[1] On April 17, 2009, plaintiffs filed an opposition to the motion to compel arbitration arguing that the arbitration clause is not valid

---

[1]On March 26, 2009, a hearing was held regarding the merits of the request for a preliminary injunction. (Docket 37.)

Next Step Medical Co., et al. v. Johnson & Johnson International
Civil No. 09-1187 (FAB/MEL)
Opinion and Order

under Puerto Rico law. (Docket 52 at 9-10.) On April 28, 2009, defendant filed a reply to the opposition to the motion to compel arbitration. (Docket 58.)

**II.   LEGAL ANALYSIS**

**A. Standard for a Motion to Compel Arbitration**

When parties have signed an agreement to arbitrate, the Federal Arbitration Act ("FAA") "reflects a strong federal policy favoring arbitration." Colón de Sánchez v. Morgan Stanley Dean Witter, 376 F. Supp. 2d 132, 135 (D.P.R. 2005) (citing HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003); KKW Enter., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42, 50 (1st Cir. 1999)). Congress enacted the FAA in order "[t]o overcome judicial resistance to arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). Thus, "[t]he FAA is intended to encourage speedy resolution of disputes and to bind parties to their voluntary agreements." Ideal Unlimited Servs. Corp. v. Swift-Eckrich, Inc., 727 F.Supp. 75, 76 (D.P.R. 1989).

Section 2 of the FAA provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  By enacting this section, "Congress declared a national policy favoring arbitration and took away from the States the power to require a judicial forum for the resolution of the claims that the contracting parties had agreed to resolve through arbitration." Southland Corp. v. Keating, 465

2

Next Step Medical Co., et al. v. Johnson & Johnson International
Civil No. 09-1187 (FAB/MEL)
Opinion and Order

U.S. 1, 10 (1984).

In order to grant a motion to compel arbitration, the following elements must be satisfied: "(1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause." Soto-Alvarez v. Am. Inv. and Mgmt. Co., 561 F. Supp. 2d 228, 230 (D.P.R. 2008) (citing InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)). "Pursuant to the FAA, we evaluate the facts and the positions espoused by the parties in light of the 'liberal federal policy favoring arbitration agreements' that 'requires a liberal reading of [such] agreements . . . .'" Colón de Sánchez, 376 F. Supp. 2d at 135 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Accordingly, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. (citing Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994); Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 388 (1st Cir. 1993); DJ Mfg. Corp. v. Tex-Shield, Inc., 998 F. Supp. 140, 143 (D.P.R. 1998)). "The court must compel the parties to arbitrate once it is satisfied that neither the making of the arbitration agreement nor the failure to comply therewith is at issue. Id. (citing Moses H. Cone, 460 U.S. at 22 n.27; Codecom, Inc. v. Alcatel Standard, S.A., 103 F. Supp. 2d 65, 68 (D.P.R. 2000)).

### B. Validity of the Arbitration Clause

Plaintiffs claim that the arbitration agreement in the present case is unenforceable because JJI used intimidation to force its preferred terms, including the arbitration clause, into the 2005

3

Next Step Medical Co., et al. v. Johnson & Johnson International
Civil No. 09-1187 (FAB/MEL)
Opinion and Order

agreement. (Docket 52 at 9-10.) Under the FAA, "the validity and enforceability of arbitration agreements are still matters of state contract law." Colón de Sánchez, 376 F.Supp.2d at 136 n. 3; see also Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005) ("[F]or the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists.") (citing Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987)). The court will therefore adjudicate the present dispute pursuant to Puerto Rico law.

A valid contract under Puerto Rico law must have: "(1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation." Soto-Alvarez, 561 F. Supp. 2d at 230 (citing P.R. LAWS ANN. tit. 31, § 3391)). Plaintiffs specifically argue that JJI's use of intimidation vitiated any consent to the 2005 agreement on the part of Next Step. (Docket 52 at 9-10.) Under Puerto Rico law, "[c]onsent given by error, under violence, by intimidation, or deceit shall be void." P.R. LAWS ANN. tit. 31, § 3404. Intimidation is present "when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants." P.R. LAWS ANN. tit. 31, § 3406. The Puerto Rico Supreme Court has identified three elements to establish intimidation:

> a) That one of the contracting parties be threatened with a serious and imminent harm that would therefore exert profound influence on his mind.
> b) That this threat determines the declaration of intent, or what is the same, that there exists a causal nexus between the intimidation and the consent.
> c) That the repeated threat and effect on the will has shadings of illegality, and cannot, therefore, be deemed the unlawful consequence of a rightful and nonabusive use of rights.

Nassar Rizek v. Hernández, et al., 23 P.R. Offic. Trans. 333 (P.R. 1989) (quoting VIII-2 J.M. MANRESA, COMENTARIOS AL CÓDIGO CIVIL ESPAÑOL 575, Madrid, Ed. Reus (1967). The Supreme Court of Puerto Rico has further stated that:

> [A] threatened person is, by reason of his character, sex, status, age, or profession, capable of resisting threat from whatever quarter, yet others, similarly threatened would, because of weakness, ignorance, inexperience, or need, make coercion possible, especially when those who voice such threat are in a position to carry it out, hence, weighing this modality of intimidating force cannot be established as a general criterion, but as one that takes into account the specific facts of each case.

Id. (quoting MANRESA, supra, at 577).

To support their argument, plaintiffs present an unsworn statement under penalty of perjury from Dávila, the president of Next Step. (Docket 52-2.) Dávila states, *inter alia*, that JJI did not allow negotiation of the arbitration clause, Next Step had no choice but to sign the agreement because JJI's products composed a significant part of its business, and refusing to sign the agreement would have put Next Step out of business. (Docket 52-2 at ¶¶ 13-15.) Plaintiffs do not submit any other evidence with their opposition, but rely on this statement to establish the necessary intimidation to invalidate the arbitration clause.

It does not appear that Dávila's unsworn statement satisfies the elements necessary to destroy Next Step's consent to the 2005 Agreement. Although Next Step may have demonstrated unequal bargaining positions in the negotiation of the 2005 Agreement, such a situation in itself is insufficient to constitute intimidation vitiating consent under Puerto Rico law. See In re Empresas Inabon, Inc., 358 B.R. 487, 523 (Bankr. D.P.R. 2006); (Docket 52-2 at ¶¶ 13-15.) Simply because the terms of an agreement are unfavorable to one party does not necessarily imply the type of

5

Next Step Medical Co., et al. v. Johnson & Johnson International
Civil No. 09-1187 (FAB/MEL)
Opinion and Order

intimidation sufficient to render said agreement unenforceable. In re Empresas Inabon, Inc., 358 B.R. at 523. Furthermore, Dávila's statement does not evince any threatening action on the part of JJI in the event that the 2005 Agreement was not signed, nor does it establish the "shadings of illegality" necessary for intimidation to be present. See id.; Nassar Rizek, 23 P.R. Offic. Trans. 360; (Docket 52-2.) It should also be noted that aside from being insufficient to satisfy the elements of intimidation under Puerto Rico law, Davila's sworn statement consists largely of conclusions with regard to the potential effect of refusing to sign the 2005 Agreement without providing supporting details. (See Docket 52-2 at ¶¶ 13-15.)

Also, defendant has presented evidence that Next Step took part in negotiations regarding the 2005 Agreement, and specifically negotiated the arbitration clause. (Docket 58 at 6-8.) Defendants have submitted correspondence between counsel for plaintiffs, Dávila, and JJI's in-house counsel dealing with the negotiation of the 2005 Agreement. (See Docket 58-2; Docket 58-3; Docket 58-4; Docket 58-5.) Specifically regarding the arbitration clause, defendant has submitted a letter from Dávila to a Franchise Director for JJI with attachments, including draft copy of the 2005 Agreement and recommendations from plaintiffs' counsel regarding the 2005 agreement. (See Docket 58-2 at 1.) The draft copy of the 2005 Agreement contains an arbitration clause specifying that New Jersey law would apply to the business relationship and provides for the "jurisdiction of any court of the State of New Jersey." (Docket 58-2 at 29-30.) With regard to this arbitration clause, the attached recommendations from plaintiffs' counsel state that "it is unacceptable that New Jersey law will apply to controversies in this agreement [and] [i]t is also unacceptable that the forum that

6

will have jurisdiction over this agreement will be the Courts of New Jersey." (Docket 58-3 at 8.) Plaintiffs' counsel also recommended that Puerto Rico law govern disputes arising out of the agreement. Id. The arbitration clause contained in the 2005 Agreement applies Puerto Rico law to the business relationship between JJI and Next Step and provides for the "jurisdiction of the U.S. Federal courts for the district of Puerto Rico," rather than maintaining the original language of the draft copy. (See Docket 30-2 at 18; Docket 58-2 at 29-30.) Thus, it appears from the documentary evidence submitted by JJI that Next Step played at least some part in the drafting and negotiation of the arbitration clause in the 2005 Agreement.

Furthermore, even if Next Step has established some threat from JJI during the course of negotiating the 2005 Agreement, the particular circumstances of this case mitigate any effect such threat could have had on Next Step's consent. Next Step and Dávila had approximately ten years of experience in the Puerto Rico spine surgery market at the time the 2005 Agreement was signed. (See Docket 52-2 at ¶¶ 2-15.) Furthermore, the evidence submitted by defendant indicates that Next Step was represented and advised by counsel during the negotiation of the 2005 Agreement. (See Docket 58-3 at 8.) Given the experience of the plaintiffs, the fact that plaintiffs were represented by counsel while negotiating the 2005 Agreement containing the arbitration clause, and the lack of evidence to establish intimidation, plaintiffs' challenge to the arbitration clause's validity under Puerto Rico law fails.

### C. Remaining Elements

To determine whether an entity is bound by or entitled to invoke an arbitration clause, it is

Next Step Medical Co., et al. v. Johnson & Johnson International
Civil No. 09-1187 (FAB/MEL)
Opinion and Order

sufficient that the entity was a party to the agreement containing the arbitration clause. Soto-Alvarez, 561 F. Supp. 2d at 231 (citing InterGen N.V., 344 F.3d at 143). A representative from both Next Step and JJI signed the 2005 Agreement containing the arbitration clause. (Docket 30-2 at 23.) Although Dávila is also a plaintiff in the present case, this does not defeat the arbitrability of the claims contained in the complaint because Dávila's tort claim for mental and emotional damages is based on the same allegations as the other claims asserted by Next Step. See Rodríguez Font v. Paine Webber, Inc., 649 F. Supp. 462, 466 (D.P.R. 1986) (holding that the addition of an individual plaintiff who was not a party to an arbitration agreement did not prevent arbitration where all claims were based on essentially the same allegations); (Docket 1-2 at ¶¶ 31-33.) The application of the arbitration clause to Dávila's claim is further justified because Dávila signed the 2005 Agreement containing the arbitration clause on behalf of Next Step as its president, and Dávila alleges his tort claim as the "company's chief officer." (Docket 1-2 at ¶¶ 31-33; Docket 30-2 at 23.) Therefore, the second and third requirements to grant a motion to compel arbitration appear to be satisfied.

It also appears that the claims alleged in the complaint clearly fall within the scope of the arbitration clause. (See Docket 1-2; Docket 30-2 at 18.) The arbitration clause includes "any dispute, controversy or claim between [Next Step] and [JJI] and/or its Affiliates arising out of or relating in any way to the business relationship between [JJI] and [Next Step]." (Docket 30-2 at 18.) All claims alleged in the complaint have their basis in the business relationship between Next Step and JJI, specifically focusing on alleged breaches of the 2005 Agreement by JJI. (See Docket 1-2 at ¶¶ 18-35.) Thus, these claims are exactly the type contemplated by the arbitration clause contained in the

8

Next Step Medical Co., et al. v. Johnson & Johnson International
Civil No. 09-1187 (FAB/MEL)
Opinion and Order

2005 Agreement.[2]

### III. CONCLUSION

For the reasons explained above, the defendant's motion to compel arbitration is GRANTED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of June, 2009.[3]

                                                                 s/Marcos E. López
                                                                 U.S. MAGISTRATE JUDGE

---

[2]Although plaintiff does not raise the issue of whether defendant has waived its right to invoke the arbitration clause in the 2005 Agreement, any such waiver argument would fail. There is no indication of any express waiver, and an implied waiver depends on the following factors:

> [W]hether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, . . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, . . . whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when the trial was near at hand . . . whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, . . . whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration . . . ) had taken place, . . . and whether the other party was affected, misled, or prejudiced by the delay.

Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 61 (1st Cir. 2003). Furthermore, a plaintiff "must show prejudice" to succeed in establishing implied waiver to the right to arbitrate. Id.
    In the present case, plaintiffs have made no showing of prejudice. Furthermore, the defendant notified the court and the plaintiffs of its intention to file a motion to compel arbitration fifteen days after removal of the case and had not engaged in any affirmative litigation conduct other than removal at the time of said notification. Therefore, it does not appear that an implied waiver argument would succeed against JJI. See Creative Solutions Group, Inc. v Pentzer Corp., 252 F.3d 28, 33 (1st Cir. 2001) (holding that a delay of five months was not sufficient to constitute implied waiver); Jones Motor Co., Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633 of N.H., 671F.2d 38, 42 (1st Cir. 1982) (finding implied waiver where a party took depositions and moved for summary judgment before attempting to invoke an arbitration agreement).

[3]This case was referred "for all pretrial matters including resolution of all non-dispositive motions and Reports and Recommendations on all dispositive motions." (Docket 3.) Several district courts have considered motions to compel arbitration as non-dispositive. See Garrison v. Palmas Del Mar Homeowners Ass'n, Inc., 538 F. Supp. 2d 468, 471 (D.P.R. 2008); González v. GE Group Adm'rs, Inc., 321 F. Supp. 2d 165, 166-67 (D.Mass. 2004); Herko v. Metro. Life Ins. Co., 978 F. Supp 141, 142 n. 1 (W.D.N.Y. 1997). Therefore, the undersigned has issued an Opinion and Order with regard to the motion to compel arbitration, (Docket 30), rather than a Report and Recommendation.

9